**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| FREDERICK THOMPSON, | ) | No. ED CV 09-2255-PLA[1] |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 10, 2009, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 6, 2010, and December 23, 2010. The parties filed a Joint Stipulation on June 15, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

_____

[1]   On December 1, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge.

## II.

## BACKGROUND

Plaintiff was born on April 21, 1972. [Administrative Record ("AR") at 45, 99, 667.] He has a bachelor's degree and past work experience as, among other things, an office manager, telemarketer, social worker, case manager, retail sales representative, cab driver, youth counselor, and behavioral health technician. [AR at 120, 168-75, 191-93, 668-70, 677.]

On January 5, 2005, plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since June 15, 2000, due to mental illness.[2] [AR at 17, 45, 47, 177-83.] After plaintiff's applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 61A-73.] A hearing was held on October 31, 2006, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 681-95.] On January 12, 2007, the ALJ found plaintiff not disabled. [AR at 36-44.] On May 18, 2007, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. [AR at 33-35.] On remand, a hearing was held on October 30, 2007, at which time plaintiff appeared with counsel and again testified on his own behalf. A vocational expert also testified. [AR at 660-80.] On November 29, 2007, a different ALJ issued an unfavorable decision, again finding plaintiff not disabled. [AR at 14-26.] When the Appeals Council denied plaintiff's request for review of the hearing decision on October 23, 2009, the ALJ's most recent decision became the final decision of the Commissioner. [AR at 6-9.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[2]   Plaintiff filed a prior application for Social Security benefits in March 2002 [AR at 113-22], which was denied initially and on reconsideration. [AR at 74-82.]

1    evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

2    60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

3            In this context, the term "substantial evidence" means "more than a mere scintilla but less

4    than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

5    adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

6    1257.  When determining whether substantial evidence exists to support the Commissioner's

7    decision, the Court examines the administrative record as a whole, considering adverse as well

8    as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

9    Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

10   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

11   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

12

13                                              IV.

14                          **THE EVALUATION OF DISABILITY**

15           Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

16   to engage in any substantial gainful activity owing to a physical or mental impairment that is

17   expected to result in death or which has lasted or is expected to last for a continuous period of at

18   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

19

20   **A.    THE FIVE-STEP EVALUATION PROCESS**

21           The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

23   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

24   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

26   substantial gainful activity, the second step requires the Commissioner to determine whether the

27   claimant has a "severe" impairment or combination of impairments significantly limiting his ability

28   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

                                              3

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one,[3] the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since June 15, 2000.[4]  [AR at 19.]  At step two, the ALJ concluded that plaintiff has the following impairments that are severe when considered in combination: "he is legally blind in his right eye, and he has paranoid schizophrenia with auditory hallucinations, and a schizoaffective disorder with depression."  [AR at 19-20.]  At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 20.]  The

---

[3]    As an initial matter, the ALJ concluded that there was no "good cause" under the Regulations to reopen plaintiff's prior application for benefits, which was denied at the reconsideration level in September 2002.  [See AR at 17.]  As plaintiff does not challenge the ALJ's determination not to reopen his prior application for benefits, the Court will not review that portion of the ALJ's decision.

[4]    The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through March 31, 2006.  [AR at 17.]

ALJ further found that plaintiff retained the residual functional capacity ("RFC")[5] "to perform at least medium work[6]," except that "his work cannot have a requirement for binocular vision and/or good depth perception," and due to plaintiff's mental impairments, "he is limited to unskilled work that requires only one/two-step operations" and does not require "interaction with the public." [AR at 21.] At step four, the ALJ concluded that plaintiff has no past relevant work experience. [AR at 24-25.] At step five, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] could perform." [AR at 25.] Accordingly, the ALJ found plaintiff not disabled. [AR at 25-26.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in: (1) determining plaintiff's mental RFC; and (2) rejecting plaintiff's subjective complaints and credibility. [Joint Stipulation ("JS") at 6.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**MENTAL RFC DETERMINATION**

Plaintiff contends that the ALJ did not properly consider the medical evidence in reaching the mental RFC determination in this case. Specifically, plaintiff asserts that the ALJ erred in rejecting the opinions of treating physicians Dr. Cristina Alonzo, Dr. Theresa K. Moon, and Dr. Gomburza M. Abad, and in ignoring portions of the opinions of consultative examining psychologist Dr. Kurt R. Bickford and nonexamining psychiatrist H. N. Hurwitz. [JS at 6-12.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record,

---

[5]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[6]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

including all medical opinion evidence.  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see SSR 96-8p, 1996 WL 374184, at *5, *7.  In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.  However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

On August 15, 2002, Dr. Moon completed a Riverside County Mental Health Narrative Report (Adult) form, in which she noted that plaintiff had received treatment from Riverside County Mental Health since August 2000 and was last seen on April 18, 2002.[7]  [AR at 299.]  Dr. Moon diagnosed plaintiff as having schizoaffective disorder, paranoid type, and opined that his prognosis

---

[7]    It is not clear from the record how long Dr. Moon treated plaintiff.  However, plaintiff's records show that he received mental health treatment at Riverside County Mental Health from May 2000 to at least May 2007 [see AR at 278-394, 405, 407, 437, 489-93], and plaintiff listed Dr. Moon as his physician in the Disability Report Adult form dated March 18, 2002.  [See AR at 113, 119, 122.]

1   was "chronic." [Id.]  She stated that the diagnosis was supported by plaintiff's symptoms of

2   concrete, disorganized, and paranoid thought process; auditory hallucinations; moderately

3   impaired memory and judgment; and evidence of depression and anxiety. [Id.]  Dr. Moon further

4   opined that plaintiff did not show an ability to maintain a sustained level of concentration, sustain

5   repetitive tasks for an extended period, adapt to new or stressful situations, or interact

6   appropriately with strangers, co-workers, or supervisors; he had an anxious attitude; and he could

7   not complete a 40-hour work week without decompensating.  She stated that plaintiff "has difficulty

8   getting a job and maintaining it," and that although plaintiff "tries hard," he gets paranoid and

9   depressed, and hallucinates.  [Id.]

10          The medical record indicates that Dr. Alonzo, also from Riverside County Mental Health,

11   treated plaintiff from August 2004 to at least May 2007.  [See AR at 180, 183, 287, 343-48, 382-

12   91, 407, 437, 443, 452-73, 484-89, 491.]  In a letter dated September 30, 2004, Dr. Alonzo stated

13   that plaintiff suffered from "chronic mental illness."  She also opined that plaintiff was unsuitable

14   for jury service and that his "disability is permanent." [AR at 287.]  In a letter dated June 8, 2006,

15   Dr. Alonzo diagnosed plaintiff as having schizoaffective disorder, depressed type; noted that

16   plaintiff has a strong family history of mental illness, is unable to keep a job, and had been

17   unemployed for the past three to four years; and opined that plaintiff would be unable to work for

18   at least one year.  [AR at 405.]

19          Dr. Alonzo completed a Psychiatric/Psychological Impairment Questionnaire form on

20   August 17, 2006, in which she diagnosed plaintiff with schizoaffective disorder, depressed type,

21   and opined that the diagnosis was supported by clinical findings of mood disturbance; paranoia

22   or inappropriate suspiciousness; history of auditory and visual hallucinations; social withdrawal or

23   isolation; blunt, flat, or inappropriate affect; decreased energy; and generalized persistent anxiety.

24   [AR at 407-08.]  She further stated that plaintiff's primary symptoms included depression, low self-

25   esteem, and auditory hallucinations (of which depression was the most frequent and/or severe),

26   and that these symptoms were consistent with his emotional impairment. [AR at 409.]  Dr. Alonzo

27

28

1  also opined, among other things, that plaintiff was moderately[8] limited in his abilities to perform

2  activities within a schedule, maintain regular attendance, be punctual within customary tolerance,

3  sustain an ordinary routine without supervision, work in coordination with or proximity to others

4  without being distracted by them, get along with co-workers or peers without distracting them or

5  exhibiting behavioral extremes, and respond appropriately to changes in the work setting; was

6  markedly limited in his ability to complete a normal workweek without interruptions from

7  psychologically based symptoms and to perform at a consistent pace without an unreasonable

8  number and length of rest periods; was capable of tolerating only a "low" amount of work stress

9  because he has poor coping skills and gets irritated easily; would likely have "good" and "bad"

10 days due to his mental impairments; and would likely miss work about two to three times per

11 month due to his impairments or treatment.  [AR at 410-14.]  Dr. Alonzo also opined that plaintiff

12 would have only mild or no limitations in his abilities to perform other work-related activities.  [AR

13 at 410-12.]  Dr. Alonzo assigned plaintiff a Global Assessment of Functioning ("GAF") score of 65,[9]

14 opined that his impairments were ongoing and would last at least twelve months, and stated that

15 plaintiff's prognosis was "fair."  [AR at 407, 413.]

16     In April 2007, plaintiff moved to Arizona in an effort "to be more independent" and to have

17 a "new start."  [See AR at 529-30, 640, 648, 674-75.]  Plaintiff received mental health treatment

18 and case management services from Value Options in Arizona, where Dr. Abad apparently worked

19 _____

20 [8]  The Questionnaire provides five ratings for 20 different work-related activities.  These
21 ratings include: 1) "No evidence of limitation in this capacity," 2) "Mildly Limited (does not
   significantly affect the individual's ability to perform the activity)," 3) "Moderately limited
22 (significantly affects but does not totally preclude the individual's ability to perform the activity),"
   4) "Markedly limited (effectively precludes the individual from performing the activity in a
23 meaningful manner)," and 5) "Not ratable on available evidence."  [AR at 409-10.]

24 [9]  A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is
25 rated with respect only to psychological, social, and occupational functioning, without regard to
   impairments in functioning due to physical or environmental limitations.  Diagnostic and Statistical
26 Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score from 61-70 indicates
   "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social,
27 occupational, or school functioning (e.g., occasional truancy, or theft within the household), but
   generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at
28 34.

1   [see AR at 614], from May 2007 to at least September 2007.  [See AR at 474-81, 502-16, 546,

2   549-637, 648-52.]  On September 10, 2007, Dr. Abad completed a Psychiatric/Psychological

3   Impairment Questionnaire form (i.e., the same form that Dr. Alonzo completed), in which he stated

4   that he had treated plaintiff on a monthly basis since June 2007.  [AR at 474.]  Dr. Abad diagnosed

5   plaintiff with schizoaffective disorder, assigned plaintiff a GAF score of 50,[10] and stated that

6   plaintiff's prognosis was "poor."  [Id.]  Dr. Abad stated that the following clinical findings supported

7   his diagnosis: sleep and mood disturbance, emotional lability, delusions or hallucinations,

8   anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or

9   inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating,

10  perceptual disturbance, time or place disorientation, catatonia or grossly disorganized behavior,

11  social withdrawal or isolation, illogical thinking or loosening of associations, decreased energy, and

12  manic syndrome; noted that plaintiff's primary symptoms included mania, depression, auditory

13  hallucinations, and paranoid delusions; and opined that plaintiff's symptoms and limitations were

14  consistent with his mental impairment.  [AR at 475-76.]  Dr. Abad further opined that plaintiff was

15  moderately limited in his abilities to carry out simple one- or two-step and detailed instructions,

16  maintain attention and concentration for extended periods, perform activities within a schedule,

17  maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine

18  without supervision, and work in coordination with or proximity to others without being distracted

19  by them; and he was markedly limited in his abilities to make simple work related decisions,

20  complete a normal workweek without interruptions from psychologically based symptoms and to

21  perform at a consistent pace without an unreasonable number and length of rest periods, interact

22  appropriately with the general public, accept instructions and respond appropriately to criticism

23  from supervisors, get along with co-workers or peers without distracting them or exhibiting

24  behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of

25  neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic

26

27  ────────────────

28      [10]   A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment
    in social, occupational, or school functioning (e.g., unable to keep a job).  DSM-IV at 34.

9

1  goals or make plans independently.  [AR at 477-79.]  Dr. Abad also opined that plaintiff
2  experiences episodes of deterioration or decompensation in work situations that cause him to
3  withdraw and/or experience exacerbation of his symptoms, explaining that plaintiff gets paranoid
4  and has hallucinations and mood swings; his impairments were ongoing and would last at least
5  twelve months; and he was incapable of even "low stress" work because his paranoia and mood
6  swings make him intolerant of work stress.  [AR at 479-80.]

7         In the decision, the ALJ gave limited weight to the opinions of Dr. Alonzo, Dr. Moon, and
8  Dr. Abad.  [See AR at 23-24.]  Specifically, the ALJ asserted that certain of Dr. Alonzo's opinions
9  expressed in the Questionnaire -- that plaintiff was capable of tolerating a low amount of work
10 stress, there are some areas of mental functioning in which plaintiff has only mild or no limitations,
11 and his GAF score of 65 -- were inconsistent with Dr. Alonzo's opinions that plaintiff is
12 "unemployable," is markedly limited in his ability to complete a normal workweek without
13 interruptions from psychologically based symptoms, and would likely miss two to three days of
14 work per month due to his mental impairment or treatment.  The ALJ asserted that "[t]hese
15 inconsistencies ... are not explained either in the assessments themselves or in the doctor's
16 progress notes."  [AR at 23.]  The ALJ rejected Dr. Moon's opinion on the basis that she did "not
17 cite any objective testing or clinical evaluations to support" her findings.  [AR at 24.]  Finally, in
18 rejecting Dr. Abad's opinion, the ALJ asserted that he "had only treated [plaintiff] for about three
19 months prior to his[] evaluation of [plaintiff's] mental condition," there was "no conclusion that the
20 severity of [plaintiff's] schizoaffective disorder would last the required 12 months or longer," and
21 "the severe limitations the doctor assigned to [plaintiff] are not supported by the overall record."
22 [Id.]  After rejecting the treating opinions of Dr. Alonzo, Dr. Moon, and Dr. Abad, the ALJ credited
23 the findings of consultative examining physicians Dr. Bickford and Dr. Linda M. Smith [see AR at
24 206-10, 213-18], as well as the opinion of nonexamining physician Dr. Hurwitz.[11]  [AR at 24;

25

26      [11]   The Court observes that although the ALJ found no good cause to reopen plaintiff's prior
27 claim for Social Security benefits [AR at 17], the opinions of Dr. Bickford, Dr. Smith, and Dr.
   Hurwitz, upon which the ALJ relied in the current finding of no disability, were all dated before
28 September 11, 2002, the date when plaintiff's prior application for benefits was denied on
                                                                      (continued...)

1    see AR at 235-54.] For the reasons explained below, the Court concludes that the ALJ improperly

2    rejected the opinions of Dr. Alonzo, Dr. Moon, and Dr. Abad.

3            Although an ALJ may properly reject a treating physician's opinions that are internally

4    inconsistent or that are inconsistent with the physician's treatment notes (Morgan v. Comm'r of

5    Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999); Matney v. Sullivan, 981 F.2d 1016, 1020

6    (9th Cir. 1992); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)), here, it is not clear that Dr.

7    Alonzo's findings were inconsistent as asserted by the ALJ.  Specifically, it is not clear -- as the

8    ALJ appears to assert in the decision [see AR at 24] -- that just because plaintiff has only mild or

9    no limitations in his abilities to perform certain discrete work activities (such as remembering

10   locations, procedures, and instructions and understanding instructions), he cannot also have

11   moderate or marked limitations in his abilities to perform other work activities that involve different

12   forms of mental functioning (such as maintaining a schedule, being punctual, completing a work

13   week without interruption from psychologically based symptoms, and performing at a consistent

14   pace without unreasonable breaks).  [See AR at 410-12.]  Similarly, it is not clear that plaintiff's

15   ability to tolerate a low amount of work stress[12] is necessarily inconsistent with his more restrictive

16   mental limitations concerning activities that appear to be, at most, only distantly related to an

17   ability to handle stress (such as plaintiff's moderate limitations in sustaining an ordinary routine

18   without supervision and working without being distracted by or distracting others). [See AR at 410-

19   11, 413.]  In sum, the Court agrees with plaintiff's contention that it is not true that "if marked

20   limitations are endorsed in any area of mental functioning, [then] marked limitations must be found

21   _____

22          [11](...continued)
     reconsideration. [See AR at 74 (reconsideration denial), 206-10 (Dr. Bickford's evaluation, dated
23   January 18, 2002), 213-18 (Dr. Smith's evaluation, dated May 28, 2002), 249-54 (Dr. Hurwitz's
     mental RFC assessment and notes, dated September 9, 2002).]
24

25          [12]  To the extent the ALJ characterized Dr. Alonzo's opinion that plaintiff was capable of
     tolerating a "low" amount of work stress as indicating that plaintiff can perform a low-stress job
26   [see AR at 24], that is not a wholly accurate characterization of Dr. Alonzo's opinion because, as
     stated above, Dr. Alonzo opined that plaintiff's mental limitations (including but not limited to his
27   limited ability to handle work stress), combined with the likelihood that he would need to miss two
     or three days of work per month due to his impairments and treatment, rendered him unable to
28   work.  [AR at 405, 407-14.]

1   in all given areas."  [JS at 8.]  Finally, the Court sees no inherent inconsistency between Dr.

2   Alonzo's finding that plaintiff could tolerate some stress and has only mild or no limitations in

3   certain activities and her finding that plaintiff would likely miss two to three days per month due

4   to his impairments and treatment, as Dr. Alonzo explained that plaintiff suffered from primary

5   symptoms of severe depression, low self esteem, and hallucinations (in addition to a number of

6   moderate and marked limitations), and plaintiff's treatment records show that he has received

7   mental health treatment since 2000.  Accordingly, the alleged "inconsistencies" highlighted by the

8   ALJ with regard to Dr. Alonzo's findings did not constitute specific and legitimate reasons for

9   rejecting Dr. Alonzo's treating opinion.

10         Further, to the extent the ALJ determined that the GAF score of 65 was inconsistent with

11   Dr. Alonzo's opinion that plaintiff had moderate and marked limitations and was unemployable,

12   it would have required little effort for the ALJ to recontact Dr. Alonzo to clarify this purportedly

13   ambiguous aspect of her opinion.  See Smolen, 80 F.3d at 1288.  The ALJ has an affirmative "duty

14   to fully and fairly develop the record and to assure that the claimant's interests are considered ...

15   even when the claimant is represented by counsel."  Celaya v. Halter, 332 F.3d 1177, 1183 (9th

16   Cir. 2003) (ellipsis in original) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see

17   Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  If evidence from a medical source is

18   inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical

19   source, including a treating physician, to determine if additional needed information is readily

20   available.  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); see also Webb v. Barnhart, 433 F.3d

21   683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by

22   ambiguous evidence [or] the ALJ's own finding that the record is inadequate").  "In cases of mental

23   impairments," the ALJ's duty to clarify and develop the record "is especially important."  DeLorme

24   v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Tonapetyan, 242 F.3d at 1150 ("The ALJ's

25   duty to develop the record fully is ... heightened where the claimant may be mentally ill and thus

26   unable to protect [his] own interests.").  The responsibility to see that this duty is fulfilled belongs

27   entirely to the ALJ; it is not part of the claimant's burden.  White v. Barnhart, 287 F.3d 903, 908

28   (10th Cir. 2001).  As there is no indication that the ALJ attempted to contact Dr. Alonzo concerning

her GAF assessment, the ALJ failed to discharge his duty in the present circumstances to clarify the record if he believed that the GAF assessment was at odds with Dr. Alonzo's opinion concerning plaintiff's limitations.[13]

Next, the ALJ's rejection of Dr. Moon's and Dr. Abad's findings as not sufficiently supported by objective findings was improper because this reasoning fails to reach the level of specificity required for rejecting a medical opinion.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted).  Further, it was erroneous for the ALJ to reject these treating physicians' findings to the extent he concluded that their treatment notes and testing methods were inadequate, because:

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.  In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D. Cal. 1986)) (ellipsis in original).

Next, the ALJ's assertion that there was no indication in Dr. Abad's opinion that plaintiff's schizoaffective disorder would last at least twelve months is incorrect.  Dr. Abad, just like Dr.

---

[13]   The Court observes that in a letter dated November 9, 2006, Dr. Alonzo explained that plaintiff's GAF score "fluctuates relative to his problems, jobs, [and] personal relationships," and that she had previously given him a GAF score of 65 when he was temporarily employed.  She further explained that plaintiff "does not have a problem looking for a job; his problem is he can't keep one."  [AR at 437.]

Alonzo, opined in the Questionnaire that plaintiff's mental impairments would last at least twelve months.  [See AR at 413, 480.]  The ALJ's misstatement of the evidence in this regard was error. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).  Furthermore, the ALJ's rejection of Dr. Abad's findings on the basis that he had only treated plaintiff for three months was improper, as a treating physician's opinion should be afforded great weight so long as the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment."  20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i).  Here, the ALJ provided no basis for assuming that Dr. Abad did not form a longitudinal picture of plaintiff's impairments in the course of treating plaintiff, and because the ALJ did not otherwise properly reject Dr. Abad's treating opinion, it was entitled to greater weight than the opinions of physicians who never treated plaintiff at all.  See, e.g., Scheu v. Astrue, 2010 WL 711813, at *13 (M.D. Tenn. Feb. 23, 2010) (the opinions of medical practitioners who had treated plaintiff for only one and two months would be justified in receiving greater weight than the "opinions of those who had not treated Plaintiff at all," except where the treating opinions were otherwise properly rejected); Moore v. Astrue, 2009 WL 724056, at *7 (D. Colo. March 18, 2009) (finding improper an ALJ's rejection of a treating physician's opinion on the basis that she had only treated plaintiff for four months).

Finally, the ALJ may not properly reject the opinion of treating physicians by merely referencing the contrary findings of examining or nonexamining physicians.  Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  See Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of [a non-treating] physician[,]' an ALJ still must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)).  As explained above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Alonzo's, Dr.

1    Moon's, and Dr. Abad's findings in favor of the conflicting nontreating medical opinions.  The ALJ's

2    rejection of these three treating physicians' opinions, without expressly setting forth legitimate

3    reasons for doing so, was improper.  See Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th

4    Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in

5    affording nontreating physicians' opinions controlling weight over the treating physicians' opinions,

6    where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his

7    interpretations thereof with an explanation as to why his interpretations of the evidence, rather

8    than those of the treating physicians, were correct).[14]  Remand is warranted on this issue.

9

10    **VI.**

11    **REMAND FOR FURTHER PROCEEDINGS**

12    As a general rule, remand is warranted where additional administrative proceedings could

13    remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

14    Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

15    In this case, remand is appropriate in order for the ALJ to reconsider the opinions of Dr. Alonzo,

16    Dr. Moon, and Dr. Abad.  The ALJ is instructed to take whatever further action is deemed

17    appropriate and consistent with this decision.

18    /

19    /

20    /

21    /

22    /

23    /

24

25    [14]   As remand is warranted for the ALJ to reconsider the opinions of Dr. Alonzo, Dr. Moon, and

26    Dr. Abad, the Court exercises its discretion not to decide whether the ALJ also improperly considered the findings of Dr. Bickford and Dr. Hurwitz.  Further, as the ALJ's credibility determination was

27    based, in part, on his analysis of the medical evidence, which the Court finds was improper for the reasons discussed above, the ALJ is instructed to reassess plaintiff's credibility after a

28    reconsideration of the medical evidence.

1    Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

2    (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

3    for further proceedings consistent with this Memorandum Opinion.

4    **This Memorandum Opinion and Order is not intended for publication, nor is it**

5    **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

6

7

8    DATED: January 19, 2011

9    _____
     PAUL L. ABRAMS
     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28